NOTICE:  THIS DECISION DOES NOT CREATE LEGAL PRECEDENT AND MAY NOT BE CITED
EXCEPT AS AUTHORIZED BY APPLICABLE RULES.
See Ariz. R. Supreme Court 111(c); ARCAP 28(c);
Ariz. R. Crim. P. 31.24

## IN THE COURT OF APPEALS
## STATE OF ARIZONA
## DIVISION ONE

DIVISION ONE
FILED: 12/22/2011
RUTH A. WILLINGHAM,
CLERK
BY: DLL

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | No. 1 CA-CR 10-0994 |
| | ) | |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | (Not for Publication - |
| MICHAEL ALAN ROTH, | ) | Rule 111, Rules of the |
| | ) | Arizona Supreme Court) |
| Appellant. | ) | |
| | ) | |
| _____ | ) | |

Appeal from the Superior Court in La Paz County

Cause No. S1500CR201000115

The Honorable Michael J. Burke, Judge

**CONVICTIONS AND SENTENCES VACATED**

---

Thomas C. Horne, Arizona Attorney General                    Phoenix
      By   Kent E. Cattani, Chief Counsel,
           Criminal Appeals/Capital Litigation Division
      And  Liza-Jane Capatos, Assistant Attorney General
Attorneys for Appellee

David Goldberg                                      Fort Collins, CO
Attorney for Appellant

---

**S W A N N**, Judge

¶1        Michael  Alan  Roth  appeals  his  convictions  and

sentences  on  two  counts  of  disorderly  conduct,  both  class  one

misdemeanors,  on  the  grounds  of  insufficiency  of  evidence  and

violation of his First Amendment rights. We find that the evidence was insufficient to support the convictions and therefore vacate the convictions and sentences.

*FACTS AND PROCEDURAL HISTORY*[1]

¶2      On April 13, 2010, Roth attended a public meeting while the Quartzsite Town Council (the "Council") met in executive session. While the Council met in a separate room, Roth and other citizens gathered for the Council's return for a "call to the public." While waiting, Roth called the planning and zoning director an "asshole," causing the city official to feel "threatened," and prompting him to ask Quartzsite Police Chief Gilbert to "come over . . . and handle the situation." This did not disrupt the executive session.

¶3      Roth later addressed the crowd and made disparaging remarks about Gilbert -- these remarks caused a few other audience members to be upset and defensive toward Roth and caused the atmosphere to become "tense" and "hostile." Roth's statements "[got] the crowd worked up," caused a "commotion,"

---

[1]   We view the facts in the light most favorable to sustaining the convictions. *State v. Haight-Gyuro*, 218 Ariz. 356, 357, ¶ 2, 186 P.3d 33, 34 (App. 2008). Accordingly, we recite the facts in that light, though a review of the video recording of the incident could lead a reasonable fact finder to a different perception of the relevant facts.

and were "disruptive."[2]   Given the circumstances, the officer
became concerned for Roth's safety.

¶4      Roth's remarks caused the crowd to become "quite
agitated," with "multiple conversations going on . . . within
the room," making it difficult for Gilbert to anticipate where
problems might arise, specifically problems with "some type of
physical retaliation."   Gilbert considered Roth's behavior
"seriously disruptive . . . because of the comments . . . and
the antagonistic behavior . . . was inciting . . . the crowd."

¶5      Gilbert told Roth to leave[3] after another audience
member stood and "angrily" gestured at Roth while suggesting
that Roth could leave if he did not like it "here."   At this
point, Gilbert felt the situation "had just gotten totally out
of hand," had become "explosive . . . in the reactions of other
people," such that he was concerned about the potential for
violence.   Roth then sat down and when he refused to leave, he
was arrested.   Roth's behavior did not stop the meeting and the
meeting continued after the Council's executive session.

---

[2]   An officer present for the meeting explained that Roth was
"disruptive" because his "demeanor was very offensive" because
"[h]e was talking about [the police chief].   He was offending
the board.   He was offensive in words he would say to members of
the public."

[3]   Gilbert testified that he previously told Roth to "remain
orderly" because of the ongoing Council meeting and that he also
advised the entire crowd that anyone who was not orderly would
be asked to leave and escorted out if the request to leave was
refused.

¶6      Roth was indicted on one count of resisting arrest, a class six felony, and two counts of disorderly conduct, both class one misdemeanors, following the April 13 arrest.  At the subsequent jury trial, in addition to testimony from Gilbert and others, the state showed two videotapes -- with sound -- that depicted portions of Roth's conduct at the meeting; one video was recorded by a camera pinned to a police officer's lapel, and the second by another audience member.  The lapel video demonstrates that Roth was initially sitting next to Gilbert, who was standing, and shows Roth insulting and badgering Gilbert with questions about his job history.  This video also shows Roth briefly arguing with other audience members and periodically chiming in on an argument that one of his political allies was having with another audience member over the town's budget deficit, expenditures, and handling of stray animals.

¶7      The audio also evidences an audience member's threat to step outside and "knock the shit" out of Roth because he suggested that the involved officials had "pea brains."  Roth asked Gilbert to evict the audience member from the meeting, and berated and baited Gilbert when he refused.  Instead, Gilbert ordered Roth's political ally to leave, which she did. The dull murmur of conversations among audience members can be heard in the background throughout this period.

4

¶8      The videotapes later depict Roth standing next to Gilbert at the podium, addressing the audience of about twenty, telling them that police officers had come to him and told him that they did not respect Gilbert.  Roth's tone was sarcastic and his demeanor was somewhat aggressive, but he paused while other audience members spoke and used gestures only to emphasize, or to point.  Roth's remarks prompted several members of the audience to defend Gilbert, some to laugh.  Gilbert then approached Roth and told him he would have to leave -- Roth told Gilbert he would sit down instead and did so, but Gilbert placed him under arrest.

¶9      Following the close of the state's evidence, the trial court denied Roth's motion for judgment of acquittal on all charges, but ruled that the initial incident during which Roth called the city official an "asshole" could not be used as evidence to support either disorderly conduct charge, because the city official had testified that this incident did not disrupt the meeting.  The judge also denied Roth an instruction on "fighting words," reasoning that the state had not charged Roth under A.R.S § 13-2904(A)(3) for "us[ing] abusive or offensive language," but rather, with conduct that "went beyond his normal freedom of speech . . . and took things a level above that and created some seriously disruptive behavior . . . made a

protracted commotion . . . it has nothing to do with fighting words." The judge instructed the jury instead that:

> Although the Constitution provides the right of freedom of speech and expression, restrictions can be made on the time, place, and manner of the speech or expression. If the speech or expression is basically incompatible with the normal activity of a particular place at a particular time, then it is not protected under the Constitution.

¶10     The jury was unable to reach a verdict on Count One, resisting arrest, but found Roth guilty of Counts Two and Three. The judge subsequently dismissed the charge of resisting arrest without prejudice, suspended sentence, and placed Roth on one year of unsupervised probation on the disorderly conduct convictions, to be served concurrently. The judge refused the state's request that he impose a condition prohibiting Roth from attending any Quartzsite Town Council meetings or functions during the period of his probation.[4]

¶11     Roth timely appeals his convictions and sentences on Counts Two and Three. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A)(1).

*DISCUSSION*

¶12     On appeal, Roth does not challenge the constitutionality of either subsection of the disorderly conduct statute under which he was charged; he challenges only the

---

[4]  The initial Release Order imposed this condition.

sufficiency of the evidence to support their constitutional application to his conduct. He argues that the jury convicted him for disorderly conduct based solely on evidence of his exercise of his right to speak on purely political issues and that the evidence failed to demonstrate that he had the necessary *mens rea*, that his conduct constituted "seriously disruptive behavior," or that he intended to prevent the transaction of any "business" being conducted.

*I.  CONSTITUTIONALITY*

¶13     We review de novo whether a statute is constitutional as applied. *State ex rel. Napolitano v. Gravano*, 204 Ariz. 106, 110, ¶ 11, 60 P.3d 246, 250 (App. 2002) (citation omitted). The right to free speech is protected by the First and Fourteenth Amendments to the United States Constitution. U.S. Const. amend. I, XIV. "The Fourteenth Amendment does not permit the State to make criminal the peaceful expression of unpopular views." *Edwards v. South Carolina*, 372 U.S. 229, 237 (1963). Speech may in fact "best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). *See Brown v. Louisiana*, 383 U.S. 131, 133, n.1 (1966) (noting that participants in a peaceful demonstration may not be charged with the danger posed by the

7

potential that their critics might react with violence, referring to the "heckler's veto").

¶14     The right to free speech, however, is not absolute, and does not protect, among other things, "'fighting words' -- those which by their very utterance inflict injury or tend to incite an immediate breach of the peace," *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942), words directed to, or likely to, incite "imminent lawless action," *Brandenburg v. Ohio*, 395 U.S. 444, 447-49 (1969), or "incitement to riot," *Feiner v. New York*, 340 U.S. 315, 321 (1951). The government may also, consistent with the First Amendment, impose reasonable restrictions on the time, place, and manner of protected speech in a public forum, so long as the restrictions are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citations omitted).

¶15     However, we generally do not reach constitutional issues if the case can be decided on other grounds. *Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n, Inc.*, 177 Ariz. 256, 259, 866 P.2d 1342, 1345 (1994). Because this case can be decided on sufficiency of the evidence, as discussed below, we need not and do not reach the constitutional issues Roth raises.

II. *SUFFICIENCY OF THE EVIDENCE*

¶16     We review de novo the trial court's denial of a Rule 20 motion and the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). A judgment of acquittal is appropriate only "if there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a). "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Landrigan*, 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993) (internal quotations omitted) (citation omitted). In reviewing the sufficiency of evidence, we view the facts in the light most favorable to upholding the jury's verdict, and resolve all conflicts in the evidence against defendant. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (citation omitted).

     A.   Count Two

¶17     A.R.S. § 13-2904(A)(1) prohibits a person from engaging in "fighting, violent or seriously disruptive behavior" with the intent to disturb the peace or knowledge that he is

doing so.   Our supreme court has construed the term "'seriously disruptive behavior' to be of the same general nature as fighting or violence or conduct liable to provoke that response in others and thus to threaten the continuation of some event, function, or activity." *In re Julio L.*, 197 Ariz. 1, 4, ¶ 11, 3 P.3d 383, 386 (2000).[5]   In this case, as in *In re Julio L.*, the state failed to present any evidence that Roth's conduct seriously disrupted any event, function or activity. *See id.* at 4-5, ¶¶ 12-18, 3 P.3d at 386-87; *see also In re Louise C.*, 197 Ariz. 84, 86, ¶ 10, 3 P.3d 1004, 1006 (App. 1999) (vacating conviction under § 13-2904(A)(1) because "[j]uvenile's language was not accompanied by anything that can reasonably be said to have been seriously disruptive of school activities.").

¶18      While Roth waited with other members of the public, the Quartzsite Town Council was in executive session and the state presented no evidence that Roth's conduct "seriously disrupted" the executive session.   Instead, the state focused on the effect of Roth's conduct on the rest of the public in the meeting room.   Other conversations can be heard continuously in the background during most of Roth's remarks, and it was only when Roth spoke to the audience briefly next to the podium where Gilbert stood that all attention appeared focused on him.   Even

---

[5]   The judge instructed the jury that "seriously disruptive" means conduct "that causes considerable distress, anxiety, and inconvenience."

then, his remarks prompted only laughter and criticism from the audience -- with the exception of one incident of angry finger-pointing.

¶19     The only evidence the state offered to show that Roth's conduct "seriously disrupted" the activity of the waiting public was testimony from Gilbert and his officer that they felt Roth's conduct was "seriously disruptive,"[6] and that they were concerned that Roth's antagonistic remarks would cause a member of the audience to retaliate physically.  Gilbert testified that he believed that Roth's remarks disparaging him had caused the mood in the room to become "explosive" when an angry audience member pointed at Roth and suggested he could leave town if he was unhappy there.  No violence erupted, however, and by Gilbert's own testimony, he was concerned only about the possibility of, or "potential" for, physical retaliation by an audience member inflamed by Roth's message. Moreover, although Roth's remarks to the audience immediately before he was arrested may have been antagonistic and annoying, he spoke in a normal voice and stopped speaking to listen as members of the audience responded.

¶20     The finger-pointing incident that Gilbert identified as crossing the line and provoking Roth's arrest, to any extent

---

[6]     The judge overruled Roth's objection to the prosecutor's question that elicited this legal conclusion from Gilbert.

that Roth can be charged with it, hardly rose to the level of probable violence. *See In re Julio L.*, 197 Ariz. at 3, ¶ 11, 3 P.3d at 385.  The evidence accordingly failed to demonstrate that Roth's conduct, any more than any other person's conduct, "seriously disrupted" the public activities of waiting for the Council to return from executive session and discussing town politics.  Gilbert testified that Roth's behavior did not stop any meeting -- the "meeting" resumed when the council members returned from executive session.

¶21     Ultimately, the evidence failed to demonstrate that Roth's conduct was of the same general nature as violence or fighting, or was likely to provoke that reaction in others, or that it threatened "the continuation of some event, function, or activity," as necessary to show that it was "seriously disruptive." *See id.*  We accordingly find that the evidence was insufficient to support Roth's conviction for disorderly conduct under A.R.S. § 13-2904(A)(1).

     B.   Count Three

¶22     For similar reasons as those discussed above, we find the evidence insufficient to support Roth's conviction under subsection (A)(4).  Section 13-2904(A)(4) prohibits a person from "mak[ing] any protracted commotion, utterance, or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession" with intent to disturb

the peace or knowledge that he was doing so.  Although the state may prove intent solely by circumstantial evidence, it may not rely solely on "speculation concerning possibilities." *State v. Garcia*, 227 Ariz. 377, 379, ¶ 9, 258 P.3d 195, 197 (App. 2011) (internal quotations omitted) (citations omitted).

¶23     The state argues that Roth's "intent to prevent the transaction of the business of a lawful meeting" could reasonably be inferred from the prolonged commotion he made before the Council returned from its executive session.  We disagree.

¶24     Even if the evidence demonstrated that Roth engaged in a "protracted commotion, utterance, or display," the evidence failed to demonstrate that, in doing so, he intended to prevent the Council from continuing "the business of a lawful meeting" once it returned from its executive session.  We also cannot agree with the state that the jury could have reasonably inferred Roth's intention to prevent the Council from resuming its business once it returned from executive session from Roth's conduct in addressing the crowd during the recess.  The state's argument, rather, relies on "speculation concerning possibilities," which cannot support a conviction.  Any "protracted commotion" caused by Roth occurred while the Council was in executive session, not during its conduct of public

business.    We   accordingly   find   that   the   evidence   was
insufficient to support a conviction under subsection (A)(4).

*CONCLUSION*

¶25        For  the  foregoing  reasons,  we  find  the  evidence  was
insufficient to support the convictions and vacate the judgments
of conviction and the sentences accordingly.


                                    /s/
                                    _____
                                    PETER B. SWANN, Judge


CONCURRING:

/s/
_____
MARGARET H. DOWNIE, Presiding Judge

/s/
_____
DONN KESSLER, Judge