Elmer Stewart Rhodes III
LAW OFFICE OF ELMER STEWART RHODES
432 E. Idaho Street, STE C-231
Kalispell, MT 59901
Telephone: (406) 882-4242
FAX: (406) 755-8335
E-mail: rhodeslegalwriting@gmail.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Allen Roth, ) <br> ) <br>     Plaintiff, ) <br> v. ) <br> ) <br> Town of Quartzsite; ) <br> Jeff Gilbert and Sondra Gayle ) <br>  Gilbert, Husband and Wife; ) <br> Officer Fabiola Garcia, #42, and ) <br>  John Doe Garcia, ) <br> Wife and Husband; ) <br> Individual Does I-X ) <br> ) <br> Defendants ) | PLAINTIFF'S RESPONSE TO <br> DEFENDANTS' MOTION TO DISMISS |

Plaintiff Michael Roth responds to Defendants' Motion to Dismiss.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **Background**

Defendants' have moved to dismiss all but Count 4 in this action claiming: 1) that four of Plaintiff's federal claims (Counts 1,2,3 & 7[1]) are outside the statute of limitations;

---

[1] Opposing counsel has sometimes written Count 6 for 7 in her motion to dismiss.

-1-

2) Plaintiff has failed to state a claim as to Count 5 & 7; and 3) Plaintiff's state claim (Count 6) is outside state statutes of limitation.

Plaintiff will show that Defendants' points One and Three, as to statute of limitations, fail because Plaintiff, at the time of his arrest on April 13, 2010, did not know he had been wrongfully arrested or that it was part of a pattern of intentional wrongful arrest against him and other dissidents until the Appellate court reversed his convictions stemming from that arrest; because that April 13, 2010 arrest was the first in what would only later become a clear pattern of arrests, and because the whistle-blowing Quartzsite police officers and the County Attorney had not yet made their public allegations of multiple intentional targeting of dissidents by Chief Gilbert.

As to Defendants' point Two, Plaintiff will show that the Factual Allegations section of Plaintiff's complaint, which was subsequently incorporated into each cause of action in the complaint, contained ample factual matter to state a claim for relief in claims 5 and 7.

**II.    Plaintiff's § 1983 Claims are timely**

What we are arguing here is "What did Mr. Roth know and when did he know it?" Opposing counsel's dissertation on statute of limitation law is correct that "Under federal law a cause of action accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action' and that "the statute of limitations begins to run when a plaintiff has knowledge . . . 'that he has been hurt . . .'"

Clearly, Mr. Roth did not know he had been hurt by means of wrongful arrest and wrongful conviction until December 22, 2011 when the Arizona Court of Appeals found that the evidence was insufficient to support the convictions, and those convictions were reversed. Up until that point in time, the acts that Defendants' committed against him, under color of law, appeared lawful. Indeed, Mr. Roth would not have been able to file a Notice of Claim with the Town nor file a federal civil rights lawsuit before the Arizona Court of Appeals ruling, since, at that time, he could not factually claim (let alone know) he had been injured by means of false arrest, where there was insufficient evidence to support charges or a conviction. And, as will be further explained below, since that April 13, 2010 arrest was the first arrest of Mr. Roth by the Quartszite police department, and since it came before the public disclosures of a concerted and intentional campaign of wrongful arrests against dissidents, Mr. Roth did not know he was the target of a conspiracy to use false arrest and false charges to stifle dissent and silence political dissidents.

**A. Counts 1, 2, 3, 6& 7 were timely filed.**

Defendants' rely on *Wallace v. Kato,* 549 U.S. 384, 391-92 (2007). But that reliance is misplaced for a variety of reasons. First, the Supreme Court's holding in *Wallace v. Kato* that the statute of limitations begins at arrest, is strictly applied only to Fourth Amendment violations, as noted by the *Wallace* Court itself, which only had occasion to consider the applicability of *Heck* to the plaintiff's false arrest claim under section 1983. *Id.* at 387 n. 1 ("[ w]e expressly limited our grant of certiorari to the *Fourth*

*Amendment* false-arrest claim '"). Additionally, the language of the Court's ultimate holding in *Wallace* demonstrates the narrowness of its application. *See id.* at 397 ("the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the *Fourth Amendment* ..."). Therefore, *Wallace*'s setting aside of tolling applies, at most, only to the wrongful arrest claim of Count 2, and does not apply to counts 1, 3, 6, or 7.

The principles of tolling, such as used in *Heck*, clearly also apply to the other claims by Plaintiff in this case, such as violations of free speech and assembly, First Amendment retaliation, malicious prosecution, intentional infliction of emotional distress, and conspiracy, and for much the same reasons, as has been recognized in numerous cases. One example is the Seventh Circuit's decision in *Parish v. City of Elkhart*, 614 F.3d 677, where the Court discussed why tolling, based on the date of conviction, is properly applied to an intentional infliction of emotional distress claim where there is ongoing violation of rights after the arrest:

> [O]fficers created a fake crime scene, fabricated evidence, tampered with evidence, destroyed or withheld exculpatory evidence, either actively suborned or deliberately turned a blind eye to perjured testimony, and testified falsely under oath, leading to his wrongful conviction. … looking only at the actions of the officers, it is clear that this tort was not completed prior to the conviction. The officers allegedly took steps through all stages of the investigation and trial that cumulatively amounted to the tort of IIED. Additionally, the conviction was an essential piece of this tort because it was the wrongful conviction that led to the emotional strain and mental anguish that Parish faced. Therefore, unlike the claimed tortious conduct in *Johnson,* which was complete immediately after the search occurred, Parish's claim of IIED was not complete prior to the time of conviction because the conviction was the crux of the claim. Turning to the

second part of the analysis, we consider whether the facts alleged to support Parish's claim of IIED directly attack the validity of the conviction. The *Heck* Court was explicitly concerned about opening up avenues to challenge a conviction through means other than the state or federally proscribed channels, such as habeas corpus. *Heck,* 512 U.S. at 482, 114 S.Ct. 2364. At the heart of Parish's complaint is a claim that the defendant officers fabricated an entire case against him that led to his wrongful conviction. The factual allegations that Parish was innocent and that the officers committed perjury, falsified evidence, coerced witnesses to commit perjury, and withheld exculpatory evidence are all challenges to the conviction that would only have been proper while the conviction was still outstanding if Parish brought them through proscribed post-conviction relief channels. Therefore, under Indiana's adoption of *Heck,* **Parish could not have brought these claims until his conviction was disposed of in a manner favorable to him. Parish brought his claim within two years of when the claim accrued upon his exoneration, thereby making the claim timely** *Id*. At 683-84 (emphasis added).

The behavior of the defendants in this case is similarly ongoing, with the violations of rights not stopping with the April 13, 2010 arrest, but ongoing thereafter, and like the plaintiff in *Parish*, Plaintiff Roth could not have brought these claims until his conviction was disposed of in a manner favorable to him. Roth brought his claims within two years of when the claim accrued upon his exoneration, thereby making the claims timely.

And because the April 13, 2010 arrest was Roth's first arrest, he could not at that time see the pattern that would later emerge of repeated arrests. He did not know, at the time of that first arrest, that it was the beginning of an intentional, planned campaign targeting of himself and other dissidents in the community with false charges, malicious prosecution, harassment, suppression and violation of First Amendment rights, retaliation, and intentional infliction of emotional distress.

That intentional, ongoing campaign of rights violations would only later be disclosed not just by the avalanche of arrests, citations, and confrontations, but also by the written and oral testimony of ten of the Quartzsite Police Department's own officers, who's May 10, 2011 written statement blew the whistle on Chief Gilbert for targeting

-5-

political opponents, and the later public disclosures by the County Attorney, Sam Vederman, in his January, 2012 letter to the FBI calling on them to begin an investigation, where Vederman stated: "I believe the circumstances warrant an investigation for the following reasons …. Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred, or, at the very least, did not rise to the level of felony conduct" (as noted in the Factual Allegations section of Plaintiff's Complaint, at paragraph 19).

And now additional testimony by the Quartzsite officers has been made available to Plaintiff, wherein they specifically discuss how Chief Gilbert gave express instructions to multiple offices that they were to target his political opponents, and opponents of his allies on the Town Council, for arrest and citations based solely on the fact that they were political enemies. And that additional testimony also discloses that the officers were told by a member of the Town Council that Chief Gilbert was being instructed by sitting members of the Town Council to carry out that campaign of false arrest, false charges, intimidation and harassment. Plaintiff will include that newly discovered testimony in an amended complaint which will be filed as fast as possible.

Another distinguishing element needed for *Wallace* to control is that, under Wallace, the Fourth Amendment violation was blatant. So blatant, that on-going conviction or no, the victim of the Fourth Amendment violation could have known at the time that he was harmed the moment the violation/false arrest occurred.

For example, in Defendants' cite of *Wallace*, Mr. Wallace, a 15 year-old at the time, had been taken to a police station for questioning, where he had been questioned all night, without an attorney. The following morning, Mr. Wallace waived his Miranda rights and "confessed" to a murder.

Most crucially, as it distinguishes from Mr. Roth's action, prior to Mr. Wallace's trial for murder, he attempted to suppress his station house statements as the "product of

unlawful arrest." (*Wallace v. Kato*, 549 U.S. 384, 386.) Therefore, even from the beginning, before he was convicted, Mr. Wallace knew he had been injured via a Fourth Amendment deprivation.

Contrast this to Mr. Roth, who did not know, and could not know, he had been injured by a false arrest until the Court of Appeals ruled his conviction invalid. The facts of *Wallace v. Kato*, and subsequent cases, involved gross Fourth Amendment violations, where the plaintiff would have known there was a blatant violation regardless of any pending prosecution or later overturning of a conviction, e.g., coerced confessions and invalid searches. Likewise, the facts of this case allow for the *Heck* exclusion, at least as to all of the other claims other than false arrest, and perhaps even as to that claim. There is a good treatise on *Heck* as it applies here in the somewhat similar situation of *Wilson v. O'brien*, 2011 WL 759939 (N.D.Ill). As the *Wilson* Court noted, In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994):

> "the Supreme Court held that the limitations period for ' § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence" does not begin to run until the conviction or sentence has been invalidated. Id. at 489–90. Earlier in the opinion, the court explained that a state prisoner presents a cause of action for damages resulting from an unconstitutional conviction when the prisoner's suit would, if successful, necessarily imply the invalidity of [the plaintiff's] conviction or sentence [.] Id. at 487." (Quoting from *Wilson* at *5.)

Per *Wilson*, *Heck* controls the start of the limitations period for Roth's claims for deprivation of constitutional rights because a finding in his favor by the Arizona Court of Appeals would necessarily imply the invalidity of his conviction. Therefore, *Wallace* does not control. The statute of limitations for all the Counts in this action started when

the Court of Appeals overturned Mr. Roth's convictions. That is when Mr. Roth had minimal factual knowledge that he had been injured as a result of Defendants' actions.

Just as Wallace cannot preclude a Fourteenth Amendment claim (which Defendants' do not dispute), neither can Wallace preclude a First Amendment claim, a claim for intentional emotional distress, retaliation, or conspiracy.

And even as to Claim 2, for false arrest, the facts of this case can be easily distinguished from Wallace, since there was no clear violation at the outset. The purpose of tolling is to permit the Plaintiff a chance of remedy for violation of rights, and that purpose should be fulfilled here, where he did file a claim two years after he became aware of the violations upon the reversal of his convictions, and the subsequent factual evidence by whistle-blowing police officers.

**B. Counts 5 & 7 - Failur to Supervise and Conspiracy, Are Amply Supported by the Factual Allegations Section of the Complaint**

Defendants' erroneously contend that Counts 5 and 7 of the Complaint fail to contain sufficient factual matter to state a claim, and that they are merely "threadbare recitals of the elements of a cause of action," that Plaintiff's municipal liability claim provides only "broad, conclusory statements" and that "Plaintiff has not alleged any non-conclusory facts that support his conspiracy claim.

Defendants' have apparently failed to notice that the Factual Allegations section of Plaintiff's complaint, which was subsequently incorporated into each cause of action in the complaint, contained ample factual matter to state a claim for relief in claims 5 and 7,

including quotations from the written statement by the ten Quartzite police officers stating that Chief Gilbert ordered them to cite and arrest people for political reasons. As the Officers' statement, submitted to the Town Council stated:

> **"He runs license plates just to find out names of people whose vehicles are parked at businesses/residences of people he doesn't like. Not for an investigation, but to gain personal Information about people for his political benefit. He runs criminal history reports through NCIC to try to find "dirt" on candidates or citizens supporting the candidates he does not like …. He orders officers to pull over and arrest/cite violations of citizens he feels are against him or he doesn't like. Not because they have committed a violation that he wants enforced equally, but because it is someone he doesn't like. Clearly this is a misuse of his power."**

As the Factual Allegations Section of the Complaint noted, the full text of that letter is available online at http://www.scribd.com/doc/59823583/Quarlzsite-Police-Officers-Association-Letter-regarding-Police-Chief.

That Factual Allegations section also quoted the County Attorney' letter to the FBI:

> "**I believe the circumstances warrant an investigation for the following reasons …. Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred, or, at the very least, did not rise to the level of felony conduct: Russell Sias (Aggravated Assault on a Peace Office), Jennifer Jones (Influencing a Witness), Michael Roth (Resisting Arrest) and Ed Foster (Obstructing a Criminal Investigation) …. The Town, through Councilwoman Patricia Anderson, publicly criticized this office for declining to prosecute Michael Roth for an incident that took place at a Town Council meeting in June 2011, It is the same incident in Which Chief Gilbert requested this office charge Mr. Roth with felony Resisting Arrest."**

As noted by the Complaint, Mr. Vederman's full letter to the FBI is available online at: http://aview.info/A-View/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-01-03-FBI-letter.pdf.

-9-

And that same section of the Complaint also noted, beginning at paragraph 22:

> John Stair, at the time Vice President of the Arizona Conference of Police and Sheriffs (AZCOPS), spoke on behalf of the ten Quartzsite officers at a Quartzsite Town Council meeting on June 14, 2011, testifying about the seriousness of the allegations against Chief Gilbert while quoting from the May 10, 2011 letter by the Quartzisite officers ( his testimony can be seen beginning at the 36:40 mark of the video available online at http://www.youtube.com/watch?v=R_pa3RPsrX8&feature=youtu.be). At the 42.38 minute mark of the above noted testimony before the Town Council, Mr. Stair notes that the Town of Quartzsite, in the wake of the allegations against Chief Gilbert, is not following its own policy of placing an officer on administrative leave when serious allegations of criminal wrongdoing are brought against the officer. Mr. Stair urged the Town to place Chief Gilbert on administrative leave during the pending investigation into the alleged wrongdoing. 23. Despite the serious allegations brought by the ten Quartzsite officers against their own Chief, and despite ongoing investigations into the alleged wrongdoing by Chief Gilbert by the State of Arizona and by the F.B.I, the Town of Quartzsite, despite having ample knowledge of the above violations of rights, has not placed Chief Gilbert, or any of the other officers accused of violating the rights of citizens and accused of criminal wrongdoing, on administrative leave, or taken any other steps to discipline, supervise, or control Chief Gilbert to prevent the violations.

It is critical to note that in the middle of Mr. Stair's testimony, as can be seen on the above linked video, several Town Council members got up and left the room, willfully refusing to even consider his testimony. That presentation of the testimony of Mr. Stair, and of the Town's subsequent willful refusal to act, presents factual evidence of the Town knowingly and intentionally refusing to place Chief Gilbert on administrative leave, or to otherwise take any steps to stop the abuse, or to discipline Gilbert or any of the officers still loyal to his unlawful orders, even after the evidence presented by the ten whistle-blowing officers, and by Mr. Stair.

Additionally, since the filing of the complaint, Plaintiff has become aware of new

information in the form of extensive and detailed Arizona Department of Pubic Safety depositions of Quartzsite police officers, who specifically testify that it was Quartzsite policy – by both Chief Gilbert and members of the Town Council - to "target" Plaintiff and other dissidents. In the interest of justice, per F.R.Civ.P 15(a)(2), Plaintiff moves to amend the complaint to incorporate this new information as it relates to Counts 5 and 7, and to the other Claims.

**CONCLUSION**

As shown, Counts 1,3,5,6 & 7 are clearly controlled by *Heck*, not *Wallace*, were timely filed, and therefore, not subject to summary dismissal. Count 6, like the federal counts, was also timely filed and therefore, not subject to dismissal. Even Count 2 should be permitted to go forward as it is distinguishable from the facts in Wallace and other cases of clear knowledge of violations that is not dependent on later revelations or later reversal of a conviction, as is the case here.

Counts 5 & 7 were amply supported by the Factual Allegations Section of the Complaint.

Defendants' motion to dismiss should be denied, and Plaintiff should be permitted to file an amended complaint once that amended complaint is submitted to this Court.

RESPECTFULLY SUBMITTED this 10th day of July, 2013.

By: /s/ Elmer Stewart Rhodes III
**Elmer Stewart Rhodes III**
432 E. Idaho Street, STE C-231
Kalispell, MT 59901

-11-

Telephone: (406) 882-4242
FAX: (406) 755-8335
E-mail: rhodeslegalwriting@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July, 2013, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, with a copy thereby being sent by email to Lisa S. Wahlin, attorney for Defendants.


By /s/Elmer Stewart Rhodes III